```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-18-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
200,000 TOWERS INVESTORS
RESTITUTION VICTIMS IN PENSION
FUNDS, MUTUAL FUNDS, THE COUNTRY
OF CAPE VERDE, CORPORATE
EMPLOYEE PENSION UNIONS,
CHURCHES, AND INDIVIDUAL
INVESTORS IN TOWERS FINANCIAL
CORP. WHO ARE THE BENEFICIARIES OF
STEVEN HOFFENBERG'S JUDGE SWEET
ORDERED $475 MILLION RESTITUTION
THAT IS NOW UNDER TWO BILLION
DOLLARS PLUS ACCRUED INTEREST,

         Petitioners,      13 Civ. 8563 (PKC)

   -against-

                  MEMORANDUM
                  AND ORDER

UNITED STATES OF AMERICA BY THE
U.S. PROBATION OFFICE NEW YORK
CITY STAFF BREACH OF THE CRIME
VICTIMS ACT,

         Respondent.
-----------------------------------------------------------x

CASTEL, District Judge:

    Two hundred thousand victims of Steven Hoffenberg's criminal fraud scheme relating to Towers Financial Corporation, purportedly represented by Alan P. Fraade, Esq. of the law firm Mintz & Fraade, P.C., commenced these proceedings.[1] Their petition names as the sole respondent the "United States of America by the U.S. Probation Office New York City Staff." The sole claim is asserted under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771,

---

[1] Hoffenberg has been convicted of conspiracy to commit securities fraud, 18 U.S.C. § 371, conspiracy to obstruct SEC proceedings, 18 U.S.C. § 371, mail fraud, 18 U.S.C. §§ 1341 & 2, and tax evasion, 21 U.S.C. § 7201. In 1997, Judge Sweet of this Court sentenced Hoffenberg to 240 months of imprisonment, three years of supervised release, restitution in the amount of $475,157,340 and a $1 million fine. United States v. Hoffenberg, 94 Cr. 213 (RWS) (Docket # 149). In an Order dated December 11, 2013, Judge Sweet modified the terms of Hoffenberg's supervised release to impose, among other restrictions, a prohibition from engaging in direct contact with his victims. (94 Cr. 213, Docket # 145.)

and the petition seeks an order directing the Probation Office of this District "to refrain from any further obstruction to Mr. Hoffenberg's efforts in collecting and paying his restitution . . . ." (Petition at 4.) Specifically, it requests that the Probation Office allow Hoffenberg to renounce his U.S. citizenship and move to China to set up a business.

Why would the victims of Hoffenberg's frauds be so eager to have him placed beyond the reach of U.S. authorities? A possible answer is found in the body of the petition and its annexations, which reveal that the law firm of Mintz & Fraade, P.C., in addition to representing the victims of Hoffenberg's fraud, also represents Hoffenberg.

For the reasons explained, the petition appears to raise serious questions as to whether counsel has complied with his professional responsibilities. It also appears that the petition is frivolous, and fails to state a claim upon which relief can be granted. As explained, the Court will direct petitioners and their counsel to show cause in writing by January 17, 2014, why this action should not be dismissed and sanctions imposed under Rule 11(b), Fed. R. Civ. P., and the inherent power of the Court.

      I.      The Law Firm of Mintz & Fraade Seeks to Represent Both the Victims of a Fraud and Its Perpetrator.

Alan Fraade purports to represent 200,000 victims of Hoffenberg's fraud. Judge Sweet has described Fraade as having "a longstanding relationship with Hoffenberg," and acting as "Hoffenberg's 'house counsel' at Towers." United States v. Hoffenberg, 908 F. Supp. 1265, 1273 (S.D.N.Y. 1995). Indeed, the petition describes Mintz & Fraade as "Mr. Hoffenberg's New York firm."[2] (Petition at 9.)

---

[2] The petition also recounts an incident in November 2013 in which Tara Hewitson of Mintz & Fraade was in the company of Hoffenberg at the time of a scheduled meeting with his probation officer. (Petition at 9.) It annexes a November 8, 2013 memo from Hewitson to the "Steven Hoffenberg File" with the boldface label "Attorney Work Product," in which Hewitson recounts her efforts to attend the 8:45 a.m. meeting between Hoffenberg and his probation officer. (Petition Ex. B.)

No explanation is furnished as to how the same Mintz & Fraade attorneys, consistent with their professional responsibilities, could represent both the convicted perpetrator of a fraud and his victims.  <u>See</u> Rule 1.7 of the New York Rules of Professional Conduct.  Rule 1.7(a)(1) provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests."  Rule 1.7(b) sets forth certain exceptions to Rule 1.7(a), but makes clear that in no circumstance may an attorney concurrently represent two or more clients when the representation "involve[s] the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."  Rule 1.7(b)(3).  In seeking $2 billion in restitution from Hoffenberg to 200,000 purported victims, it appears that the attorneys of Mintz & Fraade represent "differing interests."

> II.   It Appears that the Petition Is Frivolous, and Fails to State a Claim Upon Which Relief Can Be Granted.

It also appears that the petition fails to plausibly state a claim upon which relief can be granted.  The petition is brought pursuant to the CVRA, which does not provide for a private right of action.  <u>See</u>, e.g., <u>Cunningham v. United States Dep't of Justice</u>, __ F. Supp. 2d __, 2013 WL 4446795, at *9 (D.D.C. Aug. 21, 2013) ("No judicial relief may be had under CVRA because that statute does not allow a private party to sue for enforcement."); <u>Upton v. Fakhoury</u>, 2011 WL 3703364, at *1 (E.D. Cal. Aug. 23, 2011) ("no independent right of action was created by" the CVRA).  The petition invokes no other basis for relief or for exercising federal jurisdiction.  On this basis alone, it appears that the petition should be dismissed as frivolous.

Even if petitioners had a right of action under the CVRA, their claim seeks to modify the terms of a criminal sentence lawfully imposed upon non-party Hoffenberg by another

judge of this Court in an entirely separate criminal action. According to the petition, Hoffenberg and all 200,000 of his purported victims believe that their interests would be served if Hoffenberg is permitted to expand his "account collections" business in China and renounce his U.S. citizenship.[3] (Petition at 16.) The petition's "200,000 victims" recite frustrations that Hoffenberg has encountered while on supervised released, including difficulties receiving permission to visit his terminally ill wife in Pennsylvania and denial of permission to take notes during his meetings with probation officers.[4] (Petition at 10-15.) The petition asserts that a non-party "multi-billionaire" named Jeffrey Epstein can "easily" provide for restitution through his "over one hundred billion dollar hedge fund" that was formed with Hoffenberg's assistance. (Petition at 13-14.)

The current proceeding has not been brought as a putative class action. The petition makes no reference to Rule 23, Fed. R. Civ. P., or to a class of similarly situated persons. Implicitly, counsel purports to directly represent approximately 200,000 individuals who invested in Towers Financial. (Petition at 1.) As explained in the petition, these 200,000 individuals include mutual funds, pension funds and a significant portion of the population of the country of Cape Verde. (Petition at 3.) The petition identifies only one petitioner, however: an individual named Rey Marques, whose "Emergency Retainer Agreement" with Mintz & Fraade is annexed to the petition. (Petition at 3 & Ex. A.) Marques claims to have "been a witness to the obstruction by the United States Government which is alleged herein . . . ." (Petition at 3.) Remarkably, the Mintz & Fraade retainer agreement with Marques states, "We hereby advise

---

[3] According to the petition, Hoffenberg also has filed an application with Judge Sweet that seeks permission "to leave the United States permanently to live and work in China," where he hopes "to renounce his U.S. citizenship." (Petition at 16.)
[4] Judge Sweet's order of December 11 now permits Hoffenberg "to travel to Philadelphia, PA, for the purpose of contacting his wife in the hospital . . . ." (94 Cr. 213 Docket # 149.)

you that we are not aware of any conflicts with respect to our representation of you pursuant to this Retainer Agreement." (Petition Ex. A.)

The petition appears in several respects to be a frivolous pleading filed in violation of Rule 11(b). Rule 11(c)(3) provides that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in [an] order has not violated Rule 11(b)." On the face of the petition, such an order to show cause is warranted here.

CONCLUSION

Petitioners and Alan Fraade of the firm of Mintz & Fraade, P.C., are directed to show cause in writing by January 17, 2014, why this action should not be dismissed and sanctions imposed under Rule 11(b), Fed. R. Civ. P., with petitioners' counsel disqualified from representing petitioners.

Mr. Fraade is ordered to immediately serve the respondent with the petition and a copy of this Order.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

New York, New York
December 18, 2013